IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| MARY LEE COLTON, <br><br> Plaintiff, <br><br> vs. <br><br> BANK OF NEW YORK MELLON <br> as Trustee for the Certificate Holders of <br> CWABS Inc, Asset-Backed Certificates, <br> Series 2007-11, <br><br> Defendant. | Civil No. 26-00020 MWJS-WRP <br><br><br> ORDER (1) DISMISSING FIRST <br> AMENDED COMPLAINT AND (2) <br> GRANTING FURTHER LEAVE TO <br> AMEND |

**INTRODUCTION**

In an earlier order, this court granted Colton's application to proceed in forma pauperis ("IFP"), dismissed her complaint for lack of subject matter jurisdiction, and granted leave to amend. *Colton v. Bank of New York Mellon as Trustee for Certificate Holders of CWABS Inc, Asset-Backed Certificates, Series 2007-11*, Civ. No. 26-00020-MWJS-WRP, 2026 WL 498395 (D. Haw. Feb. 23, 2026). Colton has availed herself of that leave by filing a First Amended Complaint, or "FAC." The FAC, however, continues to suffer from legal deficiencies. The court therefore DISMISSES the FAC, but grants Colton a further opportunity to amend her pleadings.

//

//

## BACKGROUND

The FAC, together with its several exhibits, spans 326 pages.  Dkt. Nos. 25, 28.  It alleges that Colton has "spent 18 years of her life caught in an empiric network of foreclosure bias from [Defendant Bank of New York Mellon, or "BONYM"] who has pursued foreclosure 18 years without establishing lawful standing."  *Id.* at PageID.51.  She clarifies that she has been litigating a foreclosure matter in Hawaiʻi state court for 18 years, and claims that the state court "history includes two Orders of Dismissal in 2015 and in 2022 and three prior [Hawaiʻi Intermediate Court of Appeals, or "ICA"] vacaturs showing repeated appellate court rulings that confirm a lack of Defendant's standing.  *Id.* at PageID.52.  And she brings this new federal lawsuit "to seek relief from ongoing constitutional violations, improper foreclosure practices, misconduct affecting title to her property and to quiet title in her favor."  *Id.*

In its earlier screening order, the court dismissed the complaint because it failed to identify an appropriate basis for this court to exercise subject matter jurisdiction.  As the court there explained, federal question jurisdiction "exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint," and yet no such question appeared on the face of Colton's initial complaint.  *Colton*, 2026 WL 498395, at *2 (cleaned up).  The initial complaint "refers in passing to this being a 'securities-related action,'" but "apart from the suggestion that one of her claims might be based on a prior settlement of a securities action, Colton does not identify any federal

2

securities laws on which she relies." *Id.* And "a claim of a breach of a settlement

agreement—even one that resolved prior federal claims—ordinarily is not itself a claim

based on federal law." *Id.* The court recognized that "a breach claim can be federal if

the court that took the settlement either (1) incorporated the terms of the settlement

agreement into an order, or (2) expressed retained jurisdiction to enforce it," the initial

complaint "does not allege that either occurred here." *Id.* (cleaned up). And, finally,

"although the complaint asserts that BONYM violated Colton's constitutional equal

protection and due process rights, these constitutional rights protect only against the

actions of a governmental actor," which the complaint does not allege BONMY to be.

*Id.*

The initial complaint also failed adequately to allege the alternative of diversity

jurisdiction, because it did not allege the citizenship either of BONMY or of Colton

herself. *Id.* at *2–3.

Colton's FAC endeavors to address these deficiencies. As to federal question

jurisdiction, the FAC explicitly alleges violations of "the Securities Act of 1933, 15 U.S.C.

§§ 77a *et seq.*, particularly Section 17(a), 15 U.S.C. § 77q(a); and the Securities Exchange

Act of 1934, 15 U.S.C. § 78a *et seq.*, particularly Section 10(b), 15 U.S.C. § 78j(b), and Rule

10b-5, 17 C.F.R. § 240.10b-5." Dkt. No. 25, at PageID.52-53. It alleges violations of the

federal racketeering statute, 18 U.S.C. § 1961 *et seq.* And it reasserts constitutional

claims under the Fifth and Fourteenth Amendments, and now explains that this is

based, not on any assertion that BONYM is a government actor, but instead on BONYM's alleged "misuse of state judicial processes and false representations in foreclosure proceedings that deprived [Colton] of property without fair notice or opportunity to be heard." *Id*. The FAC contends that the court has subject matter jurisdiction over these constitutional claims under 42 U.S.C. § 1983, alleging that BONYM's counsel has conspired with "government officials acting under color of state law"—principally, it appears, state court judges and officers—to "block [Colton's] constitutional protections, harass Plaintiff for approximately 18 years in litigation lacking a plaintiff with established standing, fail to meet jurisdictional prerequisites in attempts to take Plaintiff's property unlawfully, withhold sufficient pre-notice of hearing location and time, and deny equal protection through conversation of pleadings without allowing [Colton] a voice before rulings." *Id.* at PageID.53.

In addition, Colton alleges that a New York state court—the New York Supreme Court—"explicitly retained exclusive jurisdiction" when it approved an "$8.5 billion Countrywide RMBS settlement" apparently in 2011. *Id.* at PageID.55–56.

As to diversity jurisdiction, Colton now alleges that she is a citizen of Hawai'i and that BONYM is a citizen of New York. And Colton argues that the court should exercise ancillary or supplemental jurisdiction over her asserted state-law claims (for which, she contends, New York law should govern). *Id.* at PageID.53.

## DISCUSSION

The FAC makes efforts to address the deficiencies identified in the initial complaint, but it suffers from legal deficiencies of its own.

To begin with, although the FAC alleges that a New York *state* court retained jurisdiction to enforce a settlement agreement, that would not give a *federal* court subject matter jurisdiction to consider any breaches of the agreement. *See Synopsys, Inc. v. Mentor Graphics Corp.*, No. C 12-5025, 2013 WL 1365946 (N.D. Cal. Apr. 13, 2013) (explaining that when "a court retains jurisdiction to enforce a settlement agreement, that court's jurisdiction over such enforcement is exclusive"). Accordingly, to the extent the FAC seeks to rely on the New York state court's retention of jurisdiction as a basis for federal court jurisdiction, that argument is not persuasive.

But the more detailed factual allegations in the FAC make clear that the focus of Colton's lawsuit is the 18 years of (apparently ongoing) litigation in the Hawai'i state courts. Colton's lawsuit names BONYM as a defendant, but alleges that state court actors have served essentially as unnamed co-conspirators. And on account of this theory, she brings claims under the federal securities laws, the federal racketeering statute, and § 1983 (with the participation of state court actors being the basis of Colton's allegation that BONYM has conspired with officials acting under color of state law). Colton alleges that there is a "systemic problem (consistently appearing in all 5 judges the case came before) in the Hawaii State foreclosure procedure," and that the

5

case "shows a need for deep analysis, review and investigation as improvement is essentially and necessary in the state courts['] deficient procedure to restore faith back into the judicial process."  Dkt. No. 25, at PageID.99.

These federal claims ordinarily would vest this court with federal question jurisdiction.  But under the circumstances of this case, Colton's allegations run into a significant jurisdictional problem:  the *Rooker-Feldman* doctrine, under which federal district courts lack subject matter jurisdiction to exercise appellate review of state court proceedings.  *See Worldwide Church of God v. McNair*, 805 F.2d 888, 890-91 (9th Cir. 1986). The FAC's allegations fall squarely within the *Rooker-Feldman* doctrine:  Colton complains of the decisions and actions of the Hawaiʻi state courts, "asserts as a legal wrong an allegedly erroneous decision by a state court"—indeed, multiple allegedly erroneous decisions—and "seeks relief from a state court judgment based on that decision."  *Carmona v. Carmona*, 603 F.3d 1041, 1050 (9th Cir. 2010) (cleaned up).

Colton devotes a section of the FAC to disputing the applicability of the *Rooker-Feldman* doctrine, Dkt. No. 25, at PageID.95–96, but that argument is not convincing.  It is not enough for Colton to *say* that she does not ask this court's "review or reversal of any final state court judgment."  *Id.*  The question is whether the nature of her claims would require the court to do so.  And in substantial part, they would.  Indeed, Colton herself acknowledges that through this lawsuit, she asks this court to intervene in the state court proceedings and grant "prospective relief to prevent continued proceedings

in the absence of jurisdiction."  *Id.*; *see also id.* at PageID.98 (alleging that "[a]bsent

federal intervention, [Colton] will continue to suffer irreparable harm through ongoing

proceedings [in state court] premised on void instruments and defective standing").

Her basis for contending that this prospective relief is appropriate is her claim that state

courts have made improper decisions in the past.  But this court does not have appellate

jurisdiction to review those decisions of the state courts, even if done on the way to

considering prospective relief.  Under the *Rooker-Feldman* doctrine, this court "is barred

from deciding not only the issues decided by the state court, but also any other issues

that are 'inextricably intertwined' with the state court's decision."  *Ljustina v. Nike, Inc.*,

Case No. 2:26-cv-00809, 2026 WL 2012907, at *3 (C.D. Cal. July 9, 2026) (quoting *Noel v.

Hall*, 341 F.3d 1148, 1158 (9th Cir. 2003)).[1]

Nor does it matter that, as Colton emphasizes in the FAC, there apparently has

been no final state court decision on the question of BONYM's "standing."  *See, e.g.*,

Dkt. No. 25, at PageID.95 (emphasizing that the "state court proceedings have not

resulted in a final judgment resolving the threshold issue of standing, which remains

unresolved after approximately eighteen years of litigation").  The *Rooker-Feldman*

doctrine applies "not only to final judgments, but also to interlocutory state court

---

[1]     As the FAC acknowledges, Dkt. No. 25, at PageID.95, abstention doctrines might separately preclude this court from intervening in ongoing state court litigation, but given that the FAC must be dismissed for independent reasons, the court does not resolve the abstention issue here.

decisions." *Santos v. Superior Ct. of Guam*, 711 F. App'x 419, 420 (9th Cir. 2018) (cleaned

up).  What matters here is that Colton asks this court to review the work of state courts,

not the finality or comprehensiveness of that state court work.

The upshot is that the FAC's allegations challenging state court actions—which

form the bulk of the FAC—do not fall within this court's subject matter jurisdiction.  To

be sure, the FAC is not limited to those.  The FAC goes on to challenge the conduct of

BONYM and its agents during the Hawaiʻi state court proceedings, independent of

state court rulings.  Viewed liberally, these allegations do not challenge or criticize (and

thus seek this court's review of) state court actions.  Instead, this set of allegations

challenges only BONYM's statements and other actions in state court.  And here Colton

runs up against a further problem:  the *Noerr-Pennington* doctrine, which shields a party

from liability based on its "petitions sent directly to the court in the course of litigation,"

as well as its "conduct incidental to the prosecution of the suit."  *Sosa v. DIRECTV, Inc.*,

437 F.3d 923, 934-35 (9th Cir. 2006) (quoting *Columbia Pictures Indus., Inc. v. Pro. Real

Estate Investors, Inc.*, 944 F.2d 1525, 1528-29 (9th Cir. 1991), *aff'd* 508 U.S. 49 (1993)).

Under this doctrine—which is designed to provide breathing space for constitutionally

protected petitioning activity—federal statutes are generally construed not to extend

liability to statements made to courts during litigation, unless the lawsuit at issue is a

sham.  *Id.* at 931-32; *see also id.* at 931 (recognizing that the *Noerr-Pennington* doctrine

8

applies not only to the antitrust context, but "applies equally in all contexts" (cleaned up)).

Although the FAC elaborates on Colton's belief that BONYM's litigation efforts are incorrect and even wrongheaded, the FAC does not offer sufficient factual allegations to show that BONYM's litigation efforts were a sham.  Litigation efforts fall to that level only if they are "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits."  *Pro. Real Estate Investors, Inc. v. Columbia Pictures Indus.*, 508 U.S. 49, 60 (1993).  The FAC offers no factual basis to reach that conclusion here.  And so the allegations challenging BONYM's litigation conduct— though not barred by the *Rooker-Feldman* doctrine—fail to state a claim for relief.  Nor does it appear likely Colton could meet this standard through further factual elaboration.  Her core contention concerns the interpretation of documents and an argument that BONYM could not handle her mortgage in the manner it did.  *See, e.g.*, Dkt. No. 25, at PageID.97 (alleging that a "purported rescission extinguished all rights in the mortgage and note, thereby voiding any subsequent assignment, including the 2010 Assignment of Mortgage, which is *void ab initio* and incapable of ratification").  She appears to suggest that Hawaiʻi state courts have not correctly resolved these issues because "Hawaii trial courts are not experienced in New York securities law violations."  *Id.* at PageID.115.  Putting aside whether Colton has the better of the interpretive debate, it is difficult to see how BONYM's litigation efforts could be so

9

objectively baseless that no reasonable litigant could expect them to succeed if, as

Colton implies, a court would need experience with an area of law to reach the correct

rulings.  In any event, it suffices to say that the FAC does not offer a factual basis for

reaching that unlikely conclusion.

Perhaps Colton also seeks to challenge BONYM's conduct outside of the context

of its state court litigation activities.  If that is so, the FAC does not supply an adequate

factual foundation for claims of that sort.  For the § 1983 claim, the only hook for

government action was the alleged participation of state courts.  For Colton's federal

securities claims, meanwhile, the FAC does not adequately allege that BONYM made

any false or misleading statements or omissions.  To meet her pleading burden for these

claims, Colton must satisfy the pleading requirements of Rule 9(b) of the Federal Rules

of Civil Procedure.  *Oregon Pub. Employees Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 605

(9th Cir. 2014) ("Rule 9(b) applies to all elements of a securities fraud action.").  This

means that "[i]n alleging fraud or mistake," Colton "must state with particularity the

circumstances constituting fraud or mistake."  *Id.* (quoting Fed. R. Civ. P. 9(b)).

Although the FAC contains a substantial amount of detail, and alleges several

statements that BONYM and its agents are alleged to have made over the years, it does

not allege with particularity that any of these statements were false or misleading.  That

is true for all of the FAC's allegations concerning BONYM's statements, but it is

especially true for claims made outside of the context of litigation.  In short, to the

extent the FAC seeks to sidestep the *Rooker-Feldman* and *Noerr-Pennington* doctrines by challenging BONYM's conduct outside of litigation, it has not offered adequate factual allegations to support any of the FAC's federal claims.

This leaves Colton's state law claims. The FAC does supply the basis for diversity jurisdiction that was lacking in the initial complaint. But here again, the *Rooker-Feldman* doctrine precludes this court from exercising jurisdiction to review state court decisions. That doctrine applies with no less force when the issues on which review is sought are state law claims rather than federal ones. *See Mothershed v. Justs. of the Sup. Ct.*, 410 F.3d 602, 607 (9th Cir. 2005), *abrogated on other grounds by T.M. v. Univ. of Md. Med. Sys. Corp.*, 146 S. Ct. 1739 (2026)). And, to the extent Colton wishes to advance state law claims that are not dependent upon a review of state court decisions—but instead based on BONYM's conduct during state court litigation—the *Noerr-Pennington* doctrine applies here with equal force. *See, e.g., Bradford Aquatic Grp., LLC v. Condor, Inc.*, No. 2:23-CV-09374, 2025 WL 3692143, at *4 & n.5 (C.D. Cal. Sept. 15, 2025) (noting that *Noerr-Pennington* "applies equally to federal and state claims" and collection cases). Finally, to the extent the FAC seeks to show either that BONYM's state court litigation was a sham or that it violated state law through conduct outside the context of litigation, the FAC does not supply adequate factual allegations to support those conclusions. The state law claims therefore fail, either for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine or for insufficiency of the pleadings.

\*       \*       \*

The remaining question is whether Colton *could* adequately allege subject matter jurisdiction or offer sufficient factual allegations to support any of her claims if given a chance to further amend the complaint.  It is a close call, but recognizing that Colton is proceeding pro se, the court will allow her another opportunity to do so.  Any amended complaint—which should be titled "Second Amended Complaint"—must be filed by August 15, 2026, and must cure the deficiencies identified above.

Colton is cautioned that failure to timely file a further amended complaint that addresses the deficiencies identified above will result in the automatic dismissal of this action.

## CONCLUSION

For the foregoing reasons, the court DISMISSES Colton's FAC and GRANTS Colton further leave to amend.

If Colton elects to file a further amended complaint, she must comply with the following requirements:

(1) Colton's deadline to file a further amended complaint is August 15, 2026;

(2) Colton's amended complaint should be titled "Second Amended Complaint"; and

(3) Colton must cure the deficiencies identified above.

12

Colton is cautioned that failure to timely file an amended complaint that complies with

this order will result in automatic dismissal of this action.

IT IS SO ORDERED.

DATED:  July 15, 2026, at Honolulu, Hawai'i.



/s/ Micah W.J. Smith
_____
Micah W.J. Smith
United States District Judge

*Mary Lee Colton v. Bank of New York Mellon as Trustee for the Certificate Holders of CWABS Inc, Asset-Backed Certificates, Series 2007-11*; Civil No. 26-00020 MWJS-WRP; ORDER (1) DISMISSING FIRST AMENDED COMPLAINT AND (2) GRANTING FURTHER LEAVE TO AMEND