IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| MARY LEE COLTON,<br><br>Plaintiff,<br><br>vs.<br><br>BANK OF NEW YORK MELLON as Trustee for the Certificate Holders of CWABS Inc, Asset-Backed Certificates, Series 2007-11,<br><br>Defendant. | Civil No. 26-00020 MWJS-WRP<br><br>ORDER DISMISSING SECOND AMENDED COMPLAINT AND RESERVING DECISION ON WHETHER TO GRANT FURTHER LEAVE TO AMEND |

**ORDER DISMISSING SECOND AMENDED COMPLAINT AND RESERVING DECISION ON WHETHER TO GRANT FURTHER LEAVE TO AMEND**

The court previously granted Colton's application to proceed in forma pauperis, but it cannot allow her complaint to be served unless and until it survives this court's screening. *See* 28 U.S.C. § 1915(e)(2)(B); *see also Lopez v. Smith*, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc). Colton's initial complaint and First Amended Complaint (the "FAC") did not survive, but after dismissing them, the court granted Colton leave to amend. Dkt. Nos. 23 (dismissing initial complaint) and 30 (dismissing FAC).

Now before the court is Colton's Second Amended Complaint (the "SAC"). Dkt. No. 33. In considering this SAC, the court assumes the parties' familiarity with the procedural history and background of this case, as well as this court's prior orders.

1. The SAC addresses three of the flaws that existed in the FAC. First, the court dismissed the FAC in part because many of its allegations called on this court to exercise appellate jurisdiction to review the decisions of state courts. Dkt. No. 30, at PageID.375–76 (explaining that under the *Rooker-Feldman* doctrine, federal district courts generally lack that authority). In her SAC, Colton carefully avoids relying on errors in state court decisions or seeking this court's intrusion into state court proceedings. Second, the court dismissed the FAC in part because of its heavy reliance on Defendant's alleged litigation conduct. *Id.* at PageID.377 (explaining that the *Noerr-Pennington* doctrine generally precludes reliance on such allegations). Colton's SAC studiously avoids relying on Defendant's litigation conduct to support her claims. *See* Dkt. No. 33, at PageID.391 (expressly limiting allegations to Defendant's alleged conduct "occurring outside protected judicial decision-making and, where applicable, outside the prosecution of the Hawai‘i state-court foreclosure action"). Third, although the court previously explained that the federal securities claims in Colton's FAC were not adequately supported with factual allegations, *id.* at PageID.379–80, Colton's SAC limits itself to state law claims, which Colton asserts are properly in federal court on diversity jurisdiction. *See* Dkt. No. 33, at PageID.392, 402–405. In these various ways, Colton's SAC is an improvement from her prior pleading.

But there remains a fatal flaw: Colton's SAC still does not offer sufficient factual detail to support any of her state law claims. Although the federal pleading standard

"does not require detailed factual allegations," it does "demand[] more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). That is to say, "it is not enough for a complaint to allege 'labels and conclusions.'" *Marshall v. Wells Fargo*, No. 25-cv-00437, 2025 WL 2938706, at *3 (D. Haw. Oct. 16, 2025) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To meet the federal pleading standard, a "complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Ibid.* The SAC does not accomplish that task.

The SAC alleges that in 2007, a mortgage broker from Countrywide Home Loans, Inc. (who is not a defendant here) "forged numbers into the loan application" and made "other material changes to the loan documents without Plaintiff's consent." Dkt. No. 33, at PageID.396. But there are no factual allegations that Bank of New York Mellon ("BONYM")—the only named defendant here—was involved in that alleged misconduct. Plaintiff's only allegation is that BONYM has concealed material information because, after it claimed authority over the loan in 2010 as trustee, it did not disclose that it might have been "a recipient or participant in the movement of funds connected with the transaction as early as 2007." *Id.* at PageID.397. Even accepted as true, these facts do not entangle BONYM in the misconduct of the mortgage broker. And Colton offers no other reason to plausibly conclude that BONYM's alleged failure

to disclose its past peripheral involvement in the movement of funds constituted a fraudulent concealment or nondisclosure.

The SAC further alleges that BONYM is not the legitimate trustee of the loan. But while it insists that it is not "rely[ing] merely upon a generalized allegation that securitization was improper," Dkt. No. 33, at PageID.398, that is exactly what the SAC does. The SAC generically asserts that "documentary evidence concerning her particular loan is inconsistent with Defendant's assertion that her loan was properly transferred into and accepted by the trust in the manner required by the governing instruments." *Id.* That is merely a conclusion, rather than factual detail on which the conclusion might plausibly rest. And while the SAC references documents attached to the SAC, it does not explain how any of these documents support the SAC's asserted conclusion—and the documents themselves do not provide any obvious support. *Id.* (alleging "that the specific transfer history of her loan, the Assignment of Mortgage (Exhibit D) the dates of the relevant instruments, and the Edward O Donnel and Edward Ofcharsky testimony (Exhibit H) governing trust documents the Bloomberg Audit (Exhibit G, P) and a 2010 date on the AOM (Exhibit D) fail to establish a transfer of Plaintiff's loan into the trust in a timely manner Defendant represented").

The SAC next alleges that because Countrywide entered into an $8.5 billion settlement in New York state court concerning its residential mortgage-backed securities, BONYM should have been aware that there were "defects, representations,

warranties, loan transfers, and mortgage-loan documentation concerning the Hawaii recorded rescission in 2011" concerning affected mortgages, of which Colton asserts her loan is one. *Id.*, at PageID.399. But even if Countrywide's settlement could constitute evidence of BONYM's knowledge of the general existence of problems with some loans, the SAC does not plausibly allege that any actual problems in her specific loan documents exist. And while it offers conclusory assertions that there are problems, the SAC does not offer factual details to support that conclusion.

Finally, Colton points to a "certified recorded instrument" which reflects that in around 2011, BONYM withdrew a notice of an intent to foreclose on the mortgage. *Id.* at PageID.400. Colton construes this document as amounting to BONYM having forever given up its right to foreclose. But nothing in the document supports that interpretation. To the contrary, although the document rescinds BONYM's then-pending foreclosure notice, it expressly states that "this rescission shall not in any manner be construed as waiving o[r] affecting any breach or default—past, present or future—under said Mortgage, or as impairing any right or remedy thereunder, but is, and shall be deemed to be, only an election." Dkt. No. 33-1, at PageID.455. Nothing about this document suggests, as Colton contends, that BONYM was "barred for all times from filing a foreclosure claim." Dkt. No. 33, at PageID.400. Its terms say the opposite—that BONYM's withdrawal of the present forfeiture notice *did not* preclude it from seeking "any right or remedy" in the future.

2. For the foregoing reasons, the SAC does not survive screening. The only remaining question is whether this court should grant further leave to amend. Given that this court has already afforded Colton two prior opportunities to amend, it appears highly unlikely that further leave to amend would be productive. But in light of "the Ninth Circuit's admonition that leave to amend should be liberally granted, especially to self-represented litigants," *Zemeckis v. Sloan Servicing*, No. 25-cv-00375, 2026 WL 248127, at *1 (D. Haw. Jan. 29, 2026), the court will reserve decision on whether leave should be granted here.

Colton is invited to file a letter explaining how, if given further leave to amend, she would further amend her complaint to sufficiently state a claim under the federal pleading standard. Colton's letter must clearly set forth the facts she would allege in an amended complaint, and it must do so in a manner that permits the court to understand which facts are relevant to each specific claim. The letter does not need to use formal or legal language, but it must at a minimum include sufficient detail to demonstrate that she could allege the necessary facts to state a claim if granted further leave to amend.

If Colton chooses to submit a letter seeking further leave to amend, she must do so by November 23, 2026. Colton is cautioned that failure to timely file a letter, or to set forth sufficient facts in that letter to provide a basis for granting leave to amend, will result in the dismissal of her lawsuit.

**CONCLUSION**

For the foregoing reasons, the court DISMISSES Colton's Second Amended Complaint, Dkt. No. 33, and DEFERS decision on the question of whether Colton should be granted further leave to amend. If Colton wishes to continue pursuing this action, she must submit a letter to the court seeking further leave to amend by no later than November 23, 2026. In any such letter, Colton must supplement her factual allegations to address the deficiencies that have been identified in this order. Colton is cautioned that if her letter fails to address the identified deficiencies, her action will be dismissed without further leave to amend. Moreover, if Colton does not file a letter requesting leave to amend by November 23, 2026, this case will be automatically dismissed.

IT IS SO ORDERED.

DATED: October 21, 2026, at Honolulu, Hawai'i.

/s/ Micah W.J. Smith

Micah W.J. Smith
United States District Judge